# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| RUTH A. JOHNSON, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00022 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
|  **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
|    Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

The plaintiff, Ruth A. Johnson, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for a period of widow's insurance benefits based on disability, ("DWIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 402(e) and 423(d) (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Johnson protectively filed her application for DWIB on April 4, 2007,[1] alleging disability as of January 11, 2000, due to back and knee problems, hypertension, anxiety and depression. (Record, ("R."), at 117-19, 135, 140, 165, 191.) The claims were denied initially and on reconsideration. (R. at 72-74, 77, 81-83.) Johnson then requested a hearing before an administrative law judge, ("ALJ"). (R. at 84.) The hearing was held on June 10, 2009, at which Johnson was represented by counsel. (R. at 28-57.)

By decision dated June 26, 2009, the ALJ denied Johnson's claim. (R. at 8-20.) The ALJ found that Johnson met all of the nondisability requirements for widow's benefits through April 30, 2014.[2] (R. at 10.) The ALJ also found that Johnson had not engaged in substantial gainful activity since January 11, 2000, the alleged onset date. (R. at 10.) The ALJ determined that the medical evidence

---

[1] Johnson filed a prior application for disability insurance benefits on May 19, 2003. (R. at 63.) The claim was denied initially and on reconsideration, and a request for hearing was filed. (R. at 63.) By decision dated July 6, 2004, the ALJ denied her claim. (R. at 63-68.) There is nothing in the record to indicate that Johnson appealed this decision.

[2] To qualify for DWIB, an individual must show that she is the widow of a deceased wage earner, has attained age 50, is unmarried (with certain exceptions) and is under a disability which began no later than seven years after the wage earner's death or seven years after she was last entitled to survivor's benefits. *See* 20 C.F.R. § 404.335 (2010).

established that Johnson suffered from severe impairments, including degenerative disc disease of the lumbosacral spine, bilateral knee pain and depression and anxiety, but she found that Johnson did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 10-11.) The ALJ found that Johnson had the residual functional capacity to perform simple, noncomplex light work[3] that allowed for moderate difficulties in maintaining concentration; occasional crouching, crawling and stooping; that allowed her to change postures briefly each hour while in place; and that did not require her to lift overhead, climb ladders, work at unprotected heights or use dangerous machinery or vibrating machinery. (R. at 13.) The ALJ found that Johnson was unable to perform her past relevant work as a sewing machine operator. (R. at 18.) Based on Johnson's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Johnson could perform, including jobs as a laundry worker, a companion to the elderly and a product packager. (R. at 19.) Thus, the ALJ found that Johnson was not under a disability as defined under the Act and was not eligible for benefits. (R. at 20.) *See* 20 C.F.R. § 404.1520(g) (2010).

After the ALJ issued her decision, Johnson pursued her administrative appeals, (R. at 21), but the Appeals Council denied her request for review. (R. at 1-4.) Johnson then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2010). The case is before this court on Johnson's motion for summary

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010).

judgment filed December 17, 2010, and the Commissioner's motion for summary judgment filed January 18, 2011.

## *II. Facts*

Johnson was born in 1956, (R. at 117), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Johnson completed the ninth grade in regular classes.[4] (R. at 47, 207.) She testified that she quit school after her mother passed away. (R. at 33.) Johnson has past work experience as a sewing machine operator. (R. at 37, 197.) She testified that she quit work because the factory closed. (R. at 37.)

In rendering her decision, the ALJ reviewed records from Virginia Public Schools; Norton Community Hospital; Dr. Kevin Blackwell, D.O.; Dr. Shirish Shahane, M.D., a state agency physician; Mountain View Regional Medical Center; Dr. Robert McGuffin, M.D., a state agency physician; Lenowisco Family Planning; Dr. Amor J. Barongan, M.D.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; and Wellmont Lonesome Pine Hospital.

School records show that Johnson attended regular classes through the ninth grade. (R. at 207-08.) She repeated the first grade. (R. at 208.) While she received some Fs and Ds in both the first and ninth grades, her second grade scores reflected Bs and Cs, and numerically, her grades were generally in the 90s. (R. at 207-08.)

---

[4] Johnson reported on her Disability Report that she completed the tenth grade. (R. at 143.) However, she testified at her hearing that she completed the eighth grade. (R. at 47.) School records show that she completed the ninth grade. (R. at 207.)

In third, fourth and fifth grades, Johnson did not receive any Ds or Fs, and her numeric grades ranged from a low of 68 to a high of 97. (R. at 208.) In sixth, seventh and eighth grades, her grades were largely numeric, with Johnson routinely achieving grades in the 70s and 80s. (R. at 207-08.) There is no indication that Johnson attended special education classes. (R. at 47, 143, 207-08, 363.)

From September 2005 through April 2009, Johnson treated with Dr. Amor A. Barongan, M.D. (R. at 313-18, 345, 391.) On June 1, 2007, an x-ray of Johnson's lumbar spine showed disc space narrowing and mild degenerative changes. (R. at 217.) Dr. Barongan historically opined that Johnson suffered from degenerative joint disease and chronic back pain. (R. at 313-17, 345, 391.) On June 12, 2008, Dr. Barongan completed an assessment indicating that Johnson could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 319-21.) Dr. Barongan reported that Johnson could stand, walk and/or sit a total of one hour in an eight-hour workday and that she could do so for one hour without interruption. (R. at 319-20.) Dr. Barongan reported that Johnson could not climb, stoop, kneel, balance, crouch or crawl. (R. at 320.) Johnson's ability to reach, to handle and to push and pull also were reported as limited. (R. at 320.) No environmental limitations were noted. (R. at 321.) Dr. Barongan reported that Johnson would be absent from work more than two days a month. (R. at 321.)

On June 11, 2007, Dr. Kevin Blackwell, D.O., examined Johnson at the request of Disability Determination Services. (R. at 218-22.) Johnson did not appear to be in any distress. (R. at 220.) Her mental status was good. (R. at 220.) Dr. Blackwell reported that Johnson had good grip strength, and her fine motor

movement skills were normal. (R. at 220.) She had some crepitus to the knees bilaterally with compression of the patella. (R. at 220.) Johnson had tenderness in the lumbar area. (R. at 220.) Dr. Blackwell diagnosed chronic low back pain, bilateral knee pain and hypertension. (R. at 220.) He reported that Johnson should limit bending, stooping, squatting and kneeling to one-third of the day or less. (R. at 221.) He found that she could sit and/or stand for up to eight hours in an eight-hour workday, assuming normal positional changes. (R. at 221.) Dr. Blackwell reported that Johnson could maximally lift objects weighing up to 40 pounds and frequently lift objects weighing up to 20 pounds. (R. at 221.)

On July 5, 2007, Dr. Shirish Shahane, M.D., a state agency physician, reported that Johnson had the residual functional capacity to perform medium work.[5] (R. at 223-29.) Dr. Shahane reported that Johnson could frequently climb ramps and stairs, balance and crouch and occasionally climb ladders, ropes and scaffolds, stoop, kneel and crawl. (R. at 225.) No manipulative, visual or communicative limitations were noted. (R. at 225-26.) Dr. Shahane reported that Johnson should avoid concentrated exposure to work hazards. (R. at 226.)

On August 31, 2007, Johnson was admitted to Mountain View Regional Medical Center for generalized weakness and anemia. (R. at 230-46.) She denied a history of anxiety or depression. (R. at 231.) She was given a blood transfusion, and was discharged the next day in improved and stable condition. (R. at 230, 233.)

---

[5] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2010).

On January 10, 2008, Dr. Robert McGuffin, M.D., a state agency physician, reported that Johnson had the residual functional capacity to perform medium work. (R. at 247-53.) Dr. McGuffin reported that Johnson could frequently climb ramps and stairs, balance and crouch and occasionally climb ladders, ropes and scaffolds, stoop, kneel and crawl. (R. at 249.) No manipulative, visual or communicative limitations were noted. (R. at 249-50.) Dr. McGuffin reported that Johnson should avoid concentrated exposure to work hazards. (R. at 250.)

On April 16, 2008, Johnson was admitted to Wellmont Lonesome Pine Hospital for severe anemia and menorrhagia with uterine fibroids. (R. at 374-90.) Johnson underwent a blood transfusion and an endometrial biopsy. (R. at 374.) She was discharged on April 18, 2008. (R. at 374.) Johnson was again admitted on July 1, 2008, with severe anemia and abnormal uterine bleeding. (R. at 379-86.) Johnson's family reported that she had been noncompliant with medical treatment. (R. at 380.) A pelvic CT scan showed an enlarged uterus. (R. at 380.) Johnson underwent a hysteroscopy with dilation and curettage. (R. at 380, 385-86.) Johnson was discharged on July 5, 2008. (R. at 379.) On July 15, 2008, Johnson was admitted for a total abdominal hysterectomy with bilateral salpingo-oophorectomy. (R. at 392-93, 399-401.)

On March 17, 2009, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Johnson at the request of Johnson's attorney. (R. at 361-70.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Johnson obtained a verbal IQ score of 64, a performance IQ score of 67 and a full-scale IQ score of 62. (R. at 362, 366.) Johnson reported that she had never had a valid driver's license. (R. at 362.) She reported that she began

to be severely depressed following her husband's suicide. (R. at 365.) Johnson reported that she preferred to be alone and that she cried frequently. (R. at 365.) Lanthorn reported that Johnson's short-term memory, as well as her concentration, were "quite poor and erratic." (R. at 366.) The Minnesota Multiphasic Personality Inventory-2, ("MMPI-2"), was administered, and indicated that Johnson was experiencing moderate to severe emotional distress characterized by depression, dysphoria, anhedonia, agitation, anxiety and guilt. (R. at 368.) It also indicated that Johnson was forgetful, had memory deficits and poor concentration. (R. at 368.) Lanthorn diagnosed severe major depressive disorder, single episode; generalized anxiety disorder; a pain disorder associated with both psychological factors and chronic general medical conditions; mild mental retardation; and a personality disorder, not otherwise specified. (R. at 368-69.) Lanthorn reported that Johnson had a then-current Global Assessment of Functioning score,[6] of 50.[7] (R. at 369.) Lanthorn strongly encouraged Johnson to seek mental health services for both psychiatric and psychotherapeutic intervention. (R. at 369.) He reported that his evaluation revealed that Johnson had functioned in the mild mentally retarded range her entire life. (R. at 369.)

Lanthorn completed a mental assessment indicating that Johnson had a satisfactory ability to understand, remember and carry out simple instructions. (R.

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[7] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

at 371.) He indicated that Johnson had a markedly[8] impaired ability to make judgments on simple work-related decisions, to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 371-72.) Lanthorn reported that Johnson would be absent from work more than two days a month due to her impairments. (R. at 373.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating disability in DWIB claims. *See* 20 C.F.R.§§ 404.335(c), 404.1505, 404.1520 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether the claimant is 1) working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2010). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairment. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that

---

[8] A marked limitation is defined as a serious limitation with substantial loss in the ability to effectively function, resulting in unsatisfactory work performance. (R. at 371.)

the claimant has the residual functional capacity, considering the claimant's age, education and work experience, to perform alternative jobs which exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Johnson argues that the ALJ erred by failing to find that she meets the criteria for the listing for mental retardation, found at 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05(C). (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Johnson argues that the ALJ improperly rejected the opinion of psychologist Lanthorn. (Plaintiff's Brief at 7-8.) Johnson also argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to the opinion of Dr. Barongan. (Plaintiff's Brief at 8-9.) Based on my review of the record, I agree and recommend that the court vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further development.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d) if she sufficiently explains her rationale and if the record supports her findings.

Johnson argues that the ALJ erred by failing to find that she meets the medical listing for mental retardation, found at § 12.05(C). For the following reasons, I agree. To qualify as disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C), a claimant's condition must meet two requirements: (1) a valid verbal, performance or full-scale IQ score of 60 through 70 and (2) a physical or other mental impairment imposing additional and significant work-related limitation of function. The Secretary's regulations do not define the term "significant." However, this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning" and "deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983). In *Townsend*, the court also noted that the antonym of "significant" is "meaningless." *See* 581 F. Supp. at 159. The regulations do provide that "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.

1, § 12.00(D)(6)(c) (2010); *see Flowers v. U.S. Dep't of Health & Human Servs.*, 904 F.2d 211 (4th Cir. 1990).

The medical evidence contained in this record documents that Johnson meets the first prong of § 12.05(C) for mental retardation. Intelligence testing performed by psychologist Lanthorn revealed a verbal IQ score of 64, a performance IQ score of 67 and a full-scale IQ score of 62. (R. at 362, 366.) Thus, *all* of the IQ scores fall within the mentally retarded range contained in § 12.05(C). Lanthorn stated that he considered these results to be a valid and reliable measure of Johnson's lifelong level of intellectual functioning. (R. at 366.) Oddly enough, the ALJ did not even discuss these findings in her decision, nor did she discuss the possibility that Johnson suffered from mental retardation. In fact, the ALJ's decision makes no mention of this evidence and does not contain any analysis of Johnson's intellectual abilities.

The Fourth Circuit has held that a claimant's IQ remains relatively constant over her lifetime, absent any evidence of change in intellectual functioning. Given that there is no other IQ testing contained in the record, and that Johnson dropped out of school around the ninth grade, I find that these IQ scores may not simply be ignored. It is well-settled that an individual's IQ is considered to remain relatively constant throughout her life, absent evidence of a change in a person's intelligence functioning. *See Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989). Here, there is no evidence of a change in Johnson's intellectual functioning. Moreover, this court has held that mental retardation is a lifelong, and not acquired, disability. *See Smith v. Barnhart*, 2005 WL 823751, at

*4 (W.D. Va. Apr. 8, 2005). Thus, for all of these reasons, I find that substantial evidence does not support the ALJ's finding with regard to the first prong of § 12.05(C).

Next, in order to meet the criteria of § 12.05(C), Johnson must show a physical or other mental impairment imposing additional and significant work-related limitation of function. I find that she has done so. Specifically, the ALJ found that Johnson had the following impairments, which constituted severe impairments: degenerative disc disease of the lumbosacral spine, bilateral knee pain and depression and anxiety. (R. at 10-11.) The Fourth Circuit held in *Evans v. Heckler*, that "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). That being the case, I find that the ALJ's finding that Johnson suffered from the above-listed severe impairments shows that she suffered from "a physical or other mental impairment imposing additional and significant work-related limitation of function," thereby meeting the second prong of § 12.05(C).

Based on the above, I find that substantial evidence does not exist in the record to support the ALJ's finding that Johnson did not meet or equal the listing of impairments § 12.05(C) for mental retardation. I recommend that the court deny Johnson's and the Commissioner's motions for summary judgment, vacate the decision of the Commissioner denying benefits and remand this case to the Commissioner for further development consistent with this decision.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding that Johnson's condition did not meet or equal the listing of impairments § 12.05(C) for mental retardation; and

2. Substantial evidence does not exist in the record to support the ALJ's finding that Johnson was not disabled under the Act and was not entitled to DWIB.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Johnson's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Johnson's claims to the Commissioner for further development.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   March 15, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE